# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN SIMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-01660-TWP-TAB |
| | ) |
| BROWN COUNTY, INDIANA, | ) |
| BROWN COUNTY DEPARTMENT OF HEALTH, | ) |
| BROWN COUNTY HEALTH BOARD, and | ) |
| JOHN KENNARD, | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss (Filing No. 35) filed by Defendants Brown County, Indiana, Brown County Department of Health, Brown County Health Board (collectively, "the County"), and John Kennard ("Mr. Kennard") (collectively, "Defendants"). Plaintiff John Simpson ("Mr. Simpson") filed claims against Defendants under 42 U.S.C. §§ 1983 and 1988 alleging violations of his procedural due process rights under the Fourteenth Amendment of the United States Constitution, as well as a state law claim against Mr. Kennard for intentional interference with business relations, based upon the revocation of Mr. Simpson's septic system installer license. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

## I. BACKGROUND

The following facts are taken from Mr. Simpson's Second Amended Complaint (Filing No. 29) and are accepted as true for purposes of this motion to dismiss. Mr. Simpson operates and is the sole owner of a business known as Monroe, LLC, which is a limited liability company organized under the laws of the State of Indiana. Through Monroe, LLC, Mr. Simpson was in the business of installing and repairing septic systems within Brown County, Indiana. Mr. Simpson

held a valid license to install and repair septic systems, issued by the Brown County Department of Health.

On or about May 31, 2013, Defendants sent a letter to Mr. Simpson stating that corrective action was required to be taken on the septic system located at his mother's property. The letter also stated that if corrective measures were not taken on the septic system, Defendants would request an executive meeting of the Brown County Health Board and a recommendation would be made to rescind Mr. Simpson's septic system installer license. On or about June 14, 2013, Defendants sent another letter to Mr. Simpson informing him that his license to install and repair septic systems in Brown County had been revoked by the Brown County Health Board. The Brown County Health Board did not hold or invite Mr. Simpson to a public meeting concerning the revocation of his license, nor did Defendants inform Mr. Simpson of any law, ordinance, or regulation which he allegedly violated.

Mr. Simpson alleges that Brown County Commissioner and Health Department employee John Kennard has a personal vendetta against him. As early as 2012, Mr. Kennard informed Mr. Simpson that he would ensure that he would never work in Brown County again. On several occasions Mr. Kennard harassed Mr. Simpson and conspired to have him removed as an approved septic installer within Brown County. Mr. Simpson claims that Mr. Kennard used his influence and power as a County Commissioner and employee of the Brown County Department of Health in furtherance of the actions towards him.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The complaint must contain only "a short and plain

statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), and there is no need for detailed factual allegations. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted). Nevertheless, the statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations and quotations omitted). "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. Procedural Due Process

Mr. Simpson alleges that he was deprived of procedural due process in the revocation of his septic installer license because he was not afforded proper notice or a hearing prior to the revocation. "To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, a plaintiff must demonstrate that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Court must first look at what due process Mr. Simpson had available to him under the relevant statutes and ordinances. Defendants argue that Mr. Simpson could have appealed the decision of the Brown County Health Department under Indiana Code § 16-41-20-9, which

provides "[a] person aggrieved by an order of a local board of health or county health officer *issued under this chapter* may, not more than ten (10) days after the making of the order, file with the circuit or superior court a petition seeking a review of the order." (emphasis added). However, this argument fails. Orders issued under Chapter 20 of Title 16, Article 41 pertain to orders to vacate and/or remedy conditions on properties that are unfit for human habitation, not the revocation of licenses and permits. See I.C. § 16-41-20-7. Mr. Simpson is not challenging the order requiring him to take corrective action on the septic project at his mother's home; rather, he is challenging the revocation of his septic installer license.

The issuance and revocation of environmental permits is governed by Article 15 of Title 13 of the Indiana Code. Indiana Code § 13-15-1-2 provides that the environmental rules board shall establish requirements for the issuance of permits for "construction, installation, or modification" of equipment or devices to control or limit the discharge or disposal of contaminants into Indiana waters or into publicly owned treatment works. The revocation of such permits is covered under Ind. Code § 13-15-7-1, which provides that permits granted under environmental management laws may be revoked for, *inter alia*, violation of any condition of the permit or any other situation or activity that is inconsistent with the purpose of Title 13. I.C. § 13-15-7-1(1), (5). The statute also provides a process for filing objections and appeals of permit revocations, stating "[a] person aggrieved by the revocation or modification of a permit may appeal the revocation or modification to the office of environmental adjudication for an administrative review under IC 4-21.5-3." I.C. § 13-15-7-3. The administrative review process provides an aggrieved party with a hearing, and "pending the decision from the hearing under IC 4-21.5-3 concerning the permit revocation . . . the permit remains in force." *Id.* Thus, Mr. Simpson had the ability to request an administrative review and hearing following the revocation of his septic installer permit. Mr.

4

Simpson's Second Amended Complaint does not specifically state that he sought review in accordance with I.C. § 13-15-7-3; however, he does state that he "availed himself of all adequate post deprivation remedies. . . ." [Filing No. 29, at ECF p. 5](). Thus, according to the allegations in his Complaint, Mr. Simpson has pursued these remedies.

Mr. Simpson argues, however, that he should have been provided a pre-deprivation hearing prior to the revocation of his license, and that the post-deprivation remedies provided by the State were inadequate. A pre-deprivation hearing is not required in all cases, and "[p]ost-deprivation remedies are a constitutionally acceptable substitute for predeprivation remedies in many procedural due process cases." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 940 (7th Cir. 2003) (quoting *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997)). The determination of what process is due before a deprivation occurs, including whether a post-deprivation hearing is adequate, requires consideration of the following factors: (1) the nature of the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. Where there is an "important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted," the state may be justified in delaying "the opportunity to be heard until after the initial deprivation." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988).

Considering the *Matthews* factors, the Court finds that a post-deprivation hearing would present an adequate remedy under the circumstances of this case. The private interest affected in this case is Mr. Simpson's ability to perform installation of and servicing on septic systems. It

does not involve a substantial financial or liberty deprivation. Second, the risk of erroneous deprivation in the absence of a prior hearing is not great. State law provides a means by which this deprivation could be minimized while the permit holder appeals the decision, as the statute allows the permit to remain in force during the pendency of the appeal. I.C. § 13-15-7-3. Thus, any erroneous deprivation could be completely remedied, and a permit holder would be made whole under the statute. Finally, the State has a substantial interest in protecting the health and safety of the environment and its citizens by preventing unqualified individuals from installing or servicing septic systems. The Supreme Court has held that "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981). This interest outweighs the potential value of affording permit holders additional procedures prior to revocation.

The Court concludes that the post-deprivation remedies that were available to Mr. Simpson were adequate, and due process does not require a pre-deprivation hearing under these circumstances. Mr. Simpson was provided notice prior to the revocation of his permit, and he also had sufficient time to at least informally respond to the notice, either by making the corrections indicated in the notice or responding to the letter in writing. Following his permit revocation, Mr. Simpson had the ability to file an objection with the office of environmental adjudication for an administrative review, during which time his permit would have remained in force. While it is uncertain whether Mr. Simpson actually followed these procedures, the Seventh Circuit has held that a plaintiff is not permitted to claim that he was denied due process just because he chose not to pursue remedies that were adequate. *Veterans Legal Def. Fund*, 330 F.3d at 941 ("Given the availability of state remedies that have not been shown to be inadequate, plaintiffs have no procedural due process claim."). Because the Court concludes that the post-deprivation procedures

are adequate to satisfy the requirements of due process, the Court finds that Mr. Simpson has not stated a claim for a violation of his procedural due process rights under the Fourteenth Amendment.

**B.     Intentional Interference with Business Relations**

Mr. Simpson also asserts a claim against Mr. Kennard individually for intentional interference with business relations, alleging that Mr. Kennard planned, conspired, and manipulated the revocation of Mr. Simpson's installer's license. Defendants argue that such a claim is barred by the Indiana Tort Claims Act, I.C. § 34-13-3-5(b) ("ITCA").

Under Indiana law, a lawsuit may not be brought against a government employee personally if the complaint, on its face, alleges that the action leading to the claim occurred within the scope of the individual's employment. *Cantrell v. Morris*, 849 N.E2d 488, 497 n.6 (Ind. 2006).

> A lawsuit filed against an employee personally must allege that the act or omission of the employee that caused a loss is . . . criminal; . . . clearly outside the scope of the employee's employment; . . . malicious; . . . willful and wanton; or . . . calculated to benefit the employee personally" and the complaint must contain "a reasonable factual basis supporting the allegations.

I.C. § 34-13-3-5(c). "The purpose of the ITCA is to 'ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.'" *Smith v. Ind. Dep't of Correction*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007) (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000)).

Although Mr. Simpson's complaint alleges that Mr. Kennard was acting outside the scope of his employment, the factual allegations throughout the rest of the complaint contradict this assertion. "[A] plaintiff cannot escape the immunity provisions of the ITCA merely by characterizing [defendant's] action as something it is not." *Parke Cnty. v. Ropak, Inc.*, 526 N.E.2d 732, 738 (Ind. Ct. App. 1988). Mr. Kennard is an elected County Commissioner for Brown

7

County, and is an employee of the Brown County Department of Health. One of the responsibilities of the Brown County Department of Health is to issue septic installer permits, as well as revoke such permits. See Brown Cnty., Ind. Ordinance No. 97-875, Art. V., "When the employee's conduct is 'of the same general nature as that authorized, or incidental to the conduct authorized,' it is 'within the scope of employment.'" *Smith*, 871 N.E.2d at 986 (quoting *Celebration Fireworks*, 727 N.E. 2d at 452). By pursuing the revocation of Mr. Simpson's septic installer license, Mr. Kennard's conduct was in the same general nature of actions that the Brown County Department of Health is authorized to take. The factual allegations in Mr. Simpson's complaint support the conclusion that Mr. Kennard was acting within the scope of his employment, thus the claim against him is barred under I.C. § 34-13-3-5(b).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Simpson has failed to state a claim for violations of his procedural due process rights under the Fourteenth Amendment of the United States Constitution, and has failed to state a claim against Mr. Kennard for intentional interference with business relations. Therefore, Defendants' Motion to Dismiss (Filing No. 35) is **GRANTED**, and Mr. Simpson's Second Amended Complaint (Filing No. 29) is **DISMISSED with prejudice**.

**SO ORDERED.**

Date: 9/29/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Scott C. Andrews
CORIDEN CORIDEN ANDREWS & GLOVER
sandrews@coriden.com

Ian L. Stewart
STEPHENSON MOROW & SEMLER
istewart@stephlaw.com

Wayne E. Uhl
STEPHENSON MOROW & SEMLER
wuhl@stephlaw.com